HEARD APRIL TERM, 1873.

## STATE *vs.* CHAIRMAN COUNTY CANVASSERS.

The special Act " to refer to the qualified voters of Barnwell County the location of the County seat," provided "that in all respects the said election shall be held, conducted and determined as is now provided by law for the holding of elections of State and County officers," and "that upon the canvassing of the votes given at such election the Commissioners of Election shall certify to the Board of County Commissioners the number of votes given for each locality, and the locality having the greater number of votes shall thenceforth be the County seat." The election was held and conducted as the special Act and the general election law provided, except that the Chairman of the Board of County Canvassers did not forward to the Governor and Secretary of State "the returns, poll lists, and all papers appertaining to the election," under a provision of the general election law: *Held,* That it was the duty of the Chairman of the Board of County Canvassers to forward to the Governor and Secretary of State "the returns, poll lists, and all papers appertaining to the election," in this, as in other cases of election, and that *mandamus* would lie to compel him.

The Supreme Court has jurisdiction under the Code of Procedure to hear an appeal from an order of the Circuit Judge discharging a rule to show cause on a petition for *mandamus.*

BEFORE MAHER, J., AT CHAMBERS, BARNWELL, APRIL, 1873.

This was a petition for *mandamus* by Charles E. Lartigue and M. F. Malony, against William A. Nerland, Chairman of the Board of County Canvassers for Barnwell County.

The case is fully stated in the opinion of the Circuit Judge, which is as follows :

MAHER, J.   This was a motion for *mandamus,* heard at Chambers, upon the petition of the relators, and the return of the respondent to a rule which had been issued against him, and upon full argument of counsel.   There being no controversy as to the facts, it is not considered necessary to set forth the allegations contained in the petition and return.   The following is a brief statement of the case :

By an Act of the General Assembly, approved 12th February, 1873, (15 Stat., 333,) the location of the County seat, County offices, and place for holding the Courts in Barnwell County, was referred to the qualified voters of said County.   The first Section of the Act directs that the Governor, within ten days from its passage, issue his proclamation requiring the Commissioners of Elections for said County, on a day therein to be named, not exceeding thirty days from the date thereof, to open the polls at the various election precincts in said County, " for the purpose of holding an election to

determine the will of the people as to the location of the County seat of said County."

The second and third Sections are, in terms, as follows:

" SEC. 2. That at such election the voting shall be by ballot, each qualified voter of the County being entitled to one vote, upon which shall be written or printed, or partly written and partly printed, the name of the locality at which he desires the County seat to be located: *Provided*, That in all respects the said election shall be held, conducted and determined as is now provided by law for the holding of elections for State and County officers.

"SEC. 3. That, upon the canvassing of the votes given at such election, the Commissioners of Election shall certify to the Board of County Commissioners for said County the number of votes given for each locality, and the locality receiving the greater number of votes shall thenceforth be the County seat of said County, at which place the public offices shall be established, and the Courts thenceforth shall be held."

The remaining Sections provide for the construction of the necessary public buildings, and for a sale of the Court House building in Blackville, and the disposition of the proceeds thereof, in the event that the removal of the County seat should be " determined upon."

In pursuance of the provisions of this Act the Governor issued his proclamation; the Commissioners of Elections caused the polls to be opened on the appointed day, 22d March, 1873 ; the election was held, the votes counted, and certified statements of the result at the several precincts were made by the Managers, and delivered, with the boxes and poll lists, in due time, to the Commissioners of Elections, who met at the County seat on the following Tuesday, the 25th March, and upon the certified returns of the Managers canvassed the votes given at said election, and aggregated the same. A protest, supported by affidavits, was presented before the Board of Canvassers, impugning the correctness and validity of the returns from certain precincts. The Commissioners of Elections, upon the canvassing of the votes by themselves, as County Canvassers, certified, in due form, to the Board of County Commissioners of said County the number of votes given at said election, as follows: For the locality, " Barnwell," one thousand eight hundred and ninety-five votes; for the locality, "Blackville," one thousand eight hundred and sixty-six votes; and for the locality, " Allendale," two

votes. The respondent was Chairman of the County Board of Canvassers. He failed to forward to the Governor and Secretary of State, after the final adjournment of that Board, the returns, poll lists, and all other papers appertaining to this election, conceiving, as appears from his return, that this duty was not imposed upon him by the terms of the Act under which the election was held; and that the provisions of the fourth Section of the Act of 1872 (15 Stat., 171,) were not applicable. Formal demand was made upon him to forward the papers, as required by the Act last referred to, but he refused to comply, and hence this application for the writ of *mandamus* to compel him to do what so was demanded of him.

The position taken on behalf of the relators is, that by the plain terms of the proviso to the second Section this election was to be, in all respects, not only held and conducted, but also *determined* in the manner prescribed by the general election laws; that such determination, therefore, could be legally made only by the State Board of Canvassers; and, accordingly, that it was the clear legal duty of the respondent to forward to the Governor and Secretary of State the returns, poll lists and all other papers appertaining to the election, in order that the said Board might organize and proceed to canvass the votes, hear the protest, and finally determine the result of the election; that until this action and determination by the State Board, the Commissioners of Elections had no power or authority to certify to the Board of County Commissioners the number of votes given for each locality; and hence, that the certificate heretofore delivered to that Board was premature and nugatory—" a pretended certificate," in the language of the petition. The relators represent that they, in common with other citizens and tax payers, are injured and aggrieved by the action of the Commissioners of Election, since their protest has been disregarded; and, by the refusal of the respondent to forward the papers, they have been prevented from establishing the grounds of said protest, and from obtaining from the State Board of Canvassers a final certificate of the result of the election, as required by law. They present, as a further grievance to themselves and others, as tax payers, that, by reason of the filing of the said "pretended certificate," certain County officers have removed, or are removing, their offices from Blackville, " the lawful County seat," to Barnwell, " the pretended County seat " of Barnwell County.

The question, therefore, is upon the proper construction of the Act authorizing this election, and, particularly, of the second and third Sections thereof.

If the terms of the second Section be considered independently of the subsequent provisions of the Act, the meaning is very clear. The nature of the election required some specification as to the form of the ballot by which the voter should signify his choice, but in all other respects the general law was, by reference, incorporated in the Act, and was to govern, as well in determining as in holding and conducting the election. A sound interpretation of the word "holding," in the clause "as is now provided by law for the holding of elections," &c., would give it a sense large enough to include all that is embraced in the terms "conducted and determined;" and this to effectuate the manifest intent indicated by the immediate context. And so, too, if the third Section be read without reference to the proviso in the second, there could be no question as to the true intent and meaning of its terms.

The Commissioners of Elections, from whom the certificate is to emanate, are the same individuals who constitute the County Board of Canvassers, and the words "upon the canvassing of the votes," would be taken as referring to the action of that Board, not only for the reason that, ordinarily, if not universally, an official certifies from his personal knowledge, but from the nature of the certificate required by this Act, which is to set forth the result of a canvassing proper, and not a determination, in the technical sense, of the result of the election.

To construe the words "upon the canvassing of the votes" as referring to the action of the State Board, when the certificate of the result of the canvass is to be made by the County Board of Canvassers, would, it seems to me, do violence to the common-sense meaning of the words as they stand with the context. But the Sections must be read together, and, if possible, the construction must be such as to give effect to both provisions. It is contended for the relators that the terms of the proviso are imperative, and that the election must be determined in all respects as is provided by the general law; and the State Board alone being invested with jurisdiction to determine, the words "upon the canvassing of the votes," can be referred only to the final canvassing by the Board which holds the power to determine. But for the clause of the proviso requiring the election to be *determined*, in all respects, as

the general law provides, it is conceded that the action of the State Board would not be invoked. It is, then, that the election may be determined according to law, that this application is made to compel the forwarding of the election papers. But it would, I apprehend, be difficult to find warrant in any approved canon of construction to justify the liberty which must needs be taken in dealing with the terms of the third Section in order to sustain this theory. The certificate upon which the Act is to operate and take effect is to issue "upon the *canvassing* of the votes." Is a determination of the election, by the State Board, comprehended in the canvassing of the votes, so that, when the canvass is completed, the result of the election is determined? Clearly not. The canvassing of the votes is a merely ministerial act, beginning at the close of the polls, when the Managers canvass the ballots, (A. A. 1868, Sp. Ses., p. 141, Secs. 20–1–2) continued by the County Board of Canvassers, when the returns of the Managers are canvassed, and completed, ordinarily, by the State Board of Canvassers, when the certified statements of the County Board are canvassed. But the determination of the result of an election, including the hearing and decision of a protest, is a judicial act. (*Vide State* vs. *Acting Board Aldermen of Charleston*, 1 S. C., 30 ; Cooley Lim., 622.) The action of the State Board of Canvassers is as follows : Upon the certified copies of the statements sent up from the Board of County Canvassers, the State Board makes a statement of the *whole number* of votes given at the election for the various officers and for *each of them voted for*. They then certify these statements to be correct, and subscribe the same with their proper names. This is the end of the canvassing. Upon such statéments the Board then proceed to determine what person has been, by the *greatest* number of votes, duly elected, and in this connection they decide any protest or contest that may arise. Finally, they make and subscribe, on the proper statement, a certificate of their determination, and deliver the same to the Secretary of State. (Gen. St., p. 29, Secs. 24, 25, 26.) Here, then, are the two proceedings—canvassing and determining—as distinctly defined as if they were conducted by separate Boards. Each terminates in a certificate.

There is, first, the certificate upon the statement of aggregated votes received by each candidate ; and then there is the certificate of determination designating the person elected. If, now, the papers

appertaining to this election must go to the State Board in order that a determination may be had, in all respects conformable to the general law, is it not remarkable that the certificate required by the third Section of the Act is to issue at a stage of the proceeding short of that determination, in the pursuit of which the papers are forwarded? It is *upon the canvassing of votes* that the certificate is delivered to the County Commissioners. If this be done at once, as the language imports it should be, the Act forthwith establishes the County seat as the certificate indicates; and yet, after this, the State Board (which may adjourn from day to day for ten days—G. S., 30, Sec. 27) might determine the election differently from the result shown by the statements of the canvass and the certificate issued in conformity thereto; or, upon considering the grounds of protest, the determination might be that the election itself was invalid. Are we at liberty to assume that the certificate must be deferred, though the canvassing has been completed, until the election is regularly determined? This would certainly be doing violence to the text, for not only is it provided that the certificate shall be made "upon the canvassing of the votes," but the document itself is precisely such as would be required to exhibit the result of a canvass, and is not such as would be proper to show the determination of the final result of the election. It is just such a certificate as the State Board makes upon the completion of their canvassing, viz: a certified statement of the number of votes, in the aggregate, received by each person voted for, and entirely different from that which certifies that a certain person, having received the greatest number of votes, was duly elected. If the Act had directed that, upon the determination of the election, the Commissioners of Elections should certify the result, there would be stronger ground to contend that a determination by the State Board was necessary; though the objection to this construction would still remain, that the certificate is required to be given, not by that Board, but by the inferior Board. But there is, in my judgment, an insuperable obstacle in the way to the construction contended for in behalf of the relators, in this: *that while the papers must go to the State Board, only for the sake of a proper determination of the election, the certificate issues upon the canvassing merely, and sets forth only the proper results of a canvass.* If, indeed, it were perfectly clear, from a just construction of all parts of the statute, that the returns were to be canvassed by the State Board, the direction to certify "upon the canvassing of the votes," read in

connection with the terms of the proviso requiring the election to be determined as provided by the general law, might, by a liberal interpretation, be taken to mean " upon a determination of the election." Still it would seem extraordinary that the Legislature, with its mind fully upon the provisions of law as to the mode of determining the results of elections, should fail to direct the proper certificate of determination, which, in general elections, is of such essential importance ; and, on the contrary, should direct a certificate which, upon its face, imports that the canvassing only had been completed, and that the election remained undetermined. But the question in the case is, whether the State Board have jurisdiction under this Act, and in exploring for the intention of the law makers, it is proper to consider the contradictions and inconsistencies which may grow out of the construction contended for. If the character of the certificate required by the Act is, as it seems to me to be, so remarkable, in view of the hypothesis that determination in due course by the State Board was intended, it is no less surprising that the Commissioners of Election, after having parted with the papers of the election, and thus, as in ordinary cases, fully discharged themselves from their official connection with the same, should be made, not, indeed, merely the medium through which the decision of the higher Board is communicated to the public, but the certifiers of the result. As long as the papers remain in their possession, the material is in hand which enables them to give the certified statement required by the Act. But it is urged here that the papers must have been sent up through the Chairman of the Board. In no instance, under the general law, do the papers thus forwarded ever find their way back to the County Board. There is no retrograde movement from the canvassing at the polls to the final certificate in the Secretary of State's office. Nor is there any case where a certificate comes *down*, in due course of law, to any official or Board. Certificates go along with and accredit returns and statements, in their progress *upwards*, to the ultimate determination. Nor does this Act provide any means whatever by which the Commissioners of Election may be officially informed of the result of the action of the State Board, which result, nevertheless, must, from the necessity of the case, be authenticated to them in some proper shape before they can be placed in a position to certify, as if of their own knowledge, the number of votes given for each locality. It is said that the

State Board would send down their certificate, and that the Com-
missioners could, upon the faith of this, themselves certify. Is it
likely that the Legislature would have failed to provide, in terms,
that such certificate should be sent down, if so circuitous and
unusual a mode of certifying the result of an election had really
been contemplated ? Would this important matter have been left
to mere inference ? Here is a clause importing into this Act, as it
is said, all the general provisions of the existing law in regard to
elections. It is argued that this clause has a controlling influence
over subsequent provisions, as it expresses the primary intent of
the Legislature in this enactment; that the determination of this
election in the regular mode was prominent in the mind of the
law makers; and that the utmost liberality should be used in the
effort to conform all provisions looking to any other kind of
determination to this express declaration of the legislative intent.
Now, when the State Board determine the result of an election,
they evidence their decision by a certificate endorsed upon the
certified statement of the result of the canvass. This certificate
they are expressly required to deliver to the Secretary of State.
They are not authorized to make any duplicate certificate for
delivery to any other officer or person. It is the Secretary of
State who gives certificates to the candidates elect. Can it be
believed that the Legislature would have failed to give the proper
direction to this final certificate of the State Board, and to provide
that it be sent either direct to the Board of County Commissioners,
or to the Election Commissioners, if, for any reason, it was deemed
proper that they should certify ? Is it not reasonable, at least, to
suppose that, having their attention directed not only to the
matter of determination, but, also, and most especially, *to the
certificate upon which the Act itself was ultimately to operate*, they
would have made some provision for authenticating, in proper
form, the result to the Election Commissioners ? But why intro-
duce the Commissioners into the Act at all in connection with the
certificate ? Why not have let the certificate of the State Board
take its usual course to the office of the Secretary of State, where
the original Act is on file, and then have directed the Secretary to
certify the result to the County Commissioners, as he would, in
ordinary cases, certify to the successful candidate ?

All this would have been obvious enough if it was contemplated
that the election should be determined by the State Board. But,

on the contrary hypothesis, that the Commissioners were to certify upon the canvassing of the votes by the County Board, we are relieved of the difficulties which attend the opposite view, and are not put to the necessity of importing into the Act important provisions, the absence of which, as they could not have been over-looked, is significant of the true intent of the Legislature. However unreasonable it might seem to have required the Commissioners of Election to certify the result of the canvassing by the State Board, still if the words of the Act admitted of no other sensible interpretation, it would be the duty of the Court to uphold and enforce it according to its terms. But when it is seen that so much essential matter is to be brought into this Act by implication, merely to support, in their most comprehensive sense, the words of the proviso, it is well to pause and inquire whether the words in question may not admit of a more limited significa-tion, which will serve to harmonize the apparent conflict between the Sections, thus avoiding what can be justified only by the most urgent necessity—the interpolation into the text of the Act of other important provisions.

The object of the Act was to ascertain the will of the people of the County in respect to the location of the County seat, and to es-tablish the same at whatsoever place they should determine. The means provided for ascertaining the will of the people was the ordi-nary way. (A. A. 1872–'73, 15 Stat., 411, 442.) An election by the qualified voters, and, with the necessary exception as to the form of the ballot, the provisions of the general law were to govern, touching the holding, conducting and determining of this election. This general intent is expressed in the proviso to the second Section. But special provision was still to be made in one important particu-lar, viz: The condition upon which any certain locality was to be-come, *by virtue of the Act itself*, the County seat, and place for hold-ing the Courts. The process of determination, under the general law, may, with propriety, be said to begin at the close of the polls, when the Managers canvass the ballots and cast up the results at various precincts. First in order are the certified returns of the Managers, then the canvassing of these returns by the County Board of Canvassers, by which the aggregate votes are ascertained, and the result certified. (G. S. 28, Section 18.) Then the canvassing by the State Board of Canvassers of the certified statements of the County Board, and these being incorporated into a statement, duly

verified by the proper certificate, the canvass is completed. This final statement, like the final statement of the County Board, shows the number of votes given for each candidate in the aggregate. Then comes the determination of the result of the election, which involves the hearing of any protest sent up with the other papers. There is determination at every stage of this process—at the precincts, at the County canvassing, and at the State canvassing, the last being final, and, in ordinary elections, indispensable. But the election now under consideration was for a special purpose—that of fixing the locality which, by force and virtue, *not of the election itself, but of the Act,* was to become the County seat. And if the Act indicates clearly that the election therein authorized should be determined in a manner which, though in general conformity with the· election laws, varied therefrom in any particular or "respect," there can be no question that the words of the proviso, "in all respects," must yield to the extent required to give effect to the special provision. The latter must be treated as an exception from the general provision, as much so as if the language of the proviso had been "in all respects, *save as hereinafter provided.*" (Potter's Dwarris, 117, 272–3.)

A construction, however, is to be preferred which expunges no word from the text, and gives effect to every expression in the statute. I think the Act itself defines the manner in which this election was to be determined; and, if this be so, then the general words of the proviso must be construed as referring to the mode thus indicated; for the terms of a statute are always to be understood as having regard to the subject-matter, as that is always in the eye of the framer of the law, and all his expressions are directed to that end. (Dwarris, 210.) Looking to the general law, we find that the canvassing is determined by aggregating the votes for each person voted for, and that the determination of the result of the election is made by ascertaining, upon the final statement of the canvass, the person who received the greatest number of votes. The Act in question makes the first kind of determination the subject of the certificate upon which it is to go into effect. The result of the election is not to be certified, but merely the result of the canvass, and the Act fastens upon the locality which appears from the certificate to have received the greater number of votes, and, *proprio vigore,* makes it thenceforth the County seat. Is not, then, the election as completely determined, *for the purposes of the statute,* as it would have

been if the canvassing, a merely ministerial act, had been completed by the State Board? And then, when it is remembered that the Commissioners of Election are to certify, and that, as County Canvassers, they have all the information needed to enable them to certify, why should the words, "upon the canvassing of the votes," be construed to mean a canvassing by the State Board, thus bringing about the necessity of importing new provisions into the Act to uphold the construction? The State Board canvass upon the statements of the County Canvassers, but these statements are, in all particulars, complete enough to satisfy the requisitions of the Act in respect to the certificate which the Commissioners are to make. It seems to me a reasonable construction to hold that the election was determined in the precise manner contemplated by the Act, and that the general words of the proviso are satisfied, if they are construed, as they must be, with reference to the subject-matter, since, in all respects, the election has been determined as is provided by law for the election of State and County officers, so far as the provisions of that law are applicable to an election, which, by the express terms of the Act, was to terminate in a certificate exhibiting the result which a canvass of the votes determined.

If the Commissioners of Election were authorized and required by the Act to certify, as they have done, upon the completion of the canvassing of the vote by the County Board of Canvassers, the Act took effect upon the filing of that certificate, and the Board of State Canvassers, having no official duty to perform in relation to this election, it was not incumbent on the respondent, as Chairman of the County Board, to forward the returns, poll lists, and other papers appertaining to the election, to the Governor and Secretary of State. Being clearly and firmly of opinion that the certificate was properly made and filed, and the Act operated, by its own terms, upon the delivery of said certificate to the Board of County Commissioners to establish Barnwell, the locality appearing from the certificate to have received the greater number of votes, as thenceforth the County seat of Barnwell County, my conclusion is that the motion for a *mandamus* must be denied.

*And it is, therefore, ordered,* That the rule against the respondent be, and hereby is, discharged.

The relators appealed.

*Bellinger,* for appellants:

The appellants, in common with others, deem themselves wronged and aggrieved by the results, as shown by the returns of the Managers; and, also, on account of illegality practiced at certain precincts. To remedy this wrong a protest was entered, and the respondent requested to perform the duty sought to be enforced by the *mandamus* in this case.

For every wrong the law provides a remedy, and the remedy in this case was clearly pointed out by the Act under which the election was held, (15 Stat., 333.) The second Section of this Act provides, *by way of proviso*, that the said election should "be held, conducted and determined in all respects as is provided by law for the holding of elections for State and County officers." It is contended, by the Court below and by the counsel for the appellee, that "determined," as used in this proviso, means the determination of the number of votes cast, as shown by the Managers' returns; but we apprehend that words, when used by the law-maker, must be construed to have their most general meaning, unless such construction would do violence to the sense. An election is said to be determined when all the requisites of the law have been complied with, and the final certificate of the State Board of Canvassers has been given. This we conceive to be the determination meant in the Act. But the Court below holds that the certificate required by the Act (15 Stat., 333,) is merely a certificate of the result of the canvassing, and not a determination of the result of the election. This, then, would seem to leave the result of the election still undetermined, and that determination being by the State Board, the appellee would be compelled, even in this view, to forward the papers as required of him, in order that there should be a final result. It is said that if the construction contended for by the appellants be allowed, the result would be that the Commissioners of Election would be required to certify a fact not within their personal knowledge, as they have to act upon the certificates of the State Board. There is no greater reason why they should not certify to this fact than why the Secretary of State should not certify to a fact not within his knowledge, and this he is expressly required to do by the 32d Section, General Statutes, p. 30.

The Commissioners of Election might well certify the results as certified to them by the State Board. But, says the appellee, no certificate of an election ever comes *down*. There never has been held such an election as this, and the necessity of a certificate

coming down is apparent. If it were not necessary for the County Commissioners to be informed of the result, no certificate would go but simply to the Secretary of State. The certificate must needs go to them, and the officers of election, so to speak, are made the channel through which it goes.

It is admitted that, if the second Section of the Act stood alone, the construction contended for by appellants would be correct; but the third, says appellee, changes the meaning of the first, and the Court below holds that the *proviso* of the second Section is the same as though it read " *shall be held, conducted and determined, in all respects, &c., save as is hereinafter provided.*" But such a construction can only be resorted to in cases in which a literal construction would violate the sense. To say that the canvassing spoken of in the third Section meant the canvassing by the State Board, can in no way violate the sense; and, even granting, for argument's sake, that it meant a canvassing by the Commissioners of Elections, still the election would not be determined " as is provided by law for the holding of elections for State and County officers," until passed upon by the State Board. I can see no violence to sense when we contend that the election must be determined as the Act itself provides. The Act is to determine the locality of the County seat *by the will of the people.* If the returns of the Managers showed one result, and a certificate were given to County Commissioners, and then the State Board, upon protest or otherwise, determined that another result was proper, as evidenced by the will of the people, is it contended that the first result must still be held to be the true one ? Suppose five hundred persons from an adjoining County voted at a precinct, polling a solid vote for one locality, and the returns of Managers showed that locality ahead by fifty votes, a protest is entered, and the State Board decide that the five hundred votes must be thrown out, would it be contended that the will of the people was expressed in the returns of Managers, and the first locality must be the County seat?

But, says appellee, the State Board has no authority to pass upon the question. Then our wrong, against which we protest, and which we prove by affidavits, must go unredressed, and we imposed upon. The respondent, however, contends that no protest is allowed us, because none is provided for in the Act. The proviso in the second clause is enough to cover the protest, and by the twenty-sixth Section, General Statutes, page 29, it is made the duty of the State

Board of Canvassers to hear and determine all protests, when the power to do so does not, by the Constitution, reside in some other body. Even upon general principles, a protest would be allowed if the election was illegal, and *a fortiori* when provided for. The respondent contends that he cannot be required to forward the papers, because he is *functus officio*. To hold that the Act is mandatory, which requires him to forward these papers in ten days, would be to allow him to defeat every election which did not please him, by simply retaining the papers beyond the ten days; whereas, if it is contended that this construction would enable him to keep the papers an indefinite time, we answer that we compel, by *mandamus*, the duty required of him.

What is the duty which respondent is required to perform ? " To transmit to the Governor and Secretary of State the returns, poll lists, and all papers appertaining to the election." This is the duty required of him by the proviso in question, and which we seek to enforce.

To arrive at the true construction of an Act, we must consider the subject concerning which it is enacted, and the intention of the Legislature, reviewing all the words of the Act, and giving them their proper meaning. The subject of this Act was an election, and it was well that the general election laws should govern. The intention of the legislator can only be arrived at from the words which he uses. What are the words used here ? That this election should be held, conducted and determined ; and what do these words mean ? That the election shall be held, *conducted* and *ended*, or concluded, as by law other elections are held, conducted and concluded ; and all elections are concluded by the certificate of the State Board. The *proviso* means, if all its requisites are not complied with, the election will be invalid. It is this proviso that gives life to the Act and effect to the election. If it is violated the election will be illegal.

The special provisions of the proviso control the general word " canvassing," in the third Section, and make that canvassing mean the canvassing by the State Board. Otherwise, the certificate may be given by the Commissioners of Election, and afterwards, when the election is " determined," the State Board may find that the majority of legal votes were given for another locality.

A construction which will work injustice and open the door to fraud will never be given to an Act when another construction,

equally sensible, and which will obviate both difficulties, can be resorted to. The grossest fraud, such as stuffing ballot boxes, illegal conduct of Managers in making ignorant parties vote to please them, &c., may be practiced without any redress, if the appellee's construction of the Act be correct. But no such practices can be carried on under our construction. This seems to me the most sensible construction of the Act, and the most sensible will always be resorted to.

Whether the result of a canvassing by the State Board will avail the appellants any advantage or not, makes no difference; if it was their right, it was incompetent for the appellee, by his conduct, to deny them that right. The appellants are entitled to be placed in a position in which they may contest the validity of the election, as the Acts of Assembly provide that they may so contest, and the election in question must be subject to the general law of elections, under the proviso.

It would be a double wrong and hardship to preclude them from establishing, if they can, the illegality of the election—a right from which they are prevented by the non-performance, by the appellee, of a duty enjoined by law.—*State* vs. *Acting Board, &c.*, 1 Rich., N. S., 30–46.

The Act of 1871–72, (15 Stat., 171,) provides that all general and special elections shall be held pursuant to its provisions. It is this Act which defines the duty of the appellee; the election in question is a *special election*; the terms of this Act must govern it, and especially so when they are expressly incorporated into the Barnwell Act by the words of the proviso.—Dwar., 228; 1 East, 64.

*Elliott, Chamberlain*, for appellants:

Briefly stated, the position of the relators and appellants is, that the second Section, as above quoted, requires the Chairman of the Board of County Canvassers to conform to the provisions of the 4th Section of the Act of March 12, 1872, which is in the following words:

"SEC. 4. After the final adjournment of the Board of County Canvassers, and within the time prescribed in this Act, the Chairman of said Board shall forward, addressed to the Governor and Secretary of State, by a messenger, the returns, poll lists, and all

papers appertaining to the election. The said messenger to be paid his actual expenses upon a certificate to be furnished him by the Secretary of State. Said certificate shall be paid out of the funds provided for the payment of Commissioners and Managers of Elections."

They maintain, with confidence, that the words of the proviso of the second Section of the Barnwell Act, to wit: "*Provided,* That in *all* respects the said election shall be *held, conducted* and *determined* as is now provided by law for the holding of elections for State and County officers," incorporate into said Act all the provisions of law regulating the holding, conducting and determining of State and County elections ; and, consequently, that it was the duty of the respondent, as Chairman of the Board of County Canvassers, to forward the returns, poll lists, and all papers, including, of course, the protest referred to, appertaining to the election, to the Governor and Secretary of State, to be laid before, and be acted upon by, the Board of State Canvassers.

The respondent maintains, in opposition to the above view, that the third Section of the Barnwell Act contemplates only a canvassing of the votes by the Board of County Canvassers, and, hence, that that Section is in the nature of an exception to, or limitation upon, the second Section, and results in making the action of the Board of County Canvassers final and conclusive of all questions connected with this election.

It seems important, if not essential, to our argument, to look, first, at the provisions of law for the holding of elections for State and County officers, in order that we may see how much force is properly due to the express language of the second Section of the Barnwell Act.

Those provisions will be found in an " Act providing for the general elections, and the manner of conducting the same," passed March 1, 1870, (Vol. XIV, p. 393,) and now forming part of the General Statutes of the State, (pp. 26, 31,) and in an amendatory Act passed March 12, 1872, (Vol. XV, p. 170).

Sufficiently stated, for the purposes of this discussion, those provisions are: that the elections shall be held and managed, at each election precinct, by a Board of three Managers, appointed by a Board of three Commissioners of Election for each County, who, in turn, are appointed by the Governor ; that at the close of election,

the Managers shall publicly count the votes, " and make such state-ment of the result thereof as the nature of the election may require," and, within three days from the close of the election, the Chairman, or one of the Board, shall deliver to the Commissioners of Election " the poll list, the boxes containing the ballots, and a written state-ment of the result of the election in his precinct ;" that the Com-missioners of Election shall meet at the County seat on the Tues-day following the election, and organize as a Board of County Canvassers, proceed to count the votes of the County, and " make such statement thereof as the nature of the election shall require," and, within ten days of the time of their first meeting, as a Board of County Canvassers, " forward, addressed to the Governor and Secretary of State, by a messenger, the returns, poll list, and all papers appertaining to the election ;" that the Secretary of State shall convene the Board of State Canvassers, " for the purpose of canvassing the vote of all officers voted for at such election ;" that the Board, when organized, " shall, upon the certified copies of the statements made by the County Canvassers, proceed to make a state-ment of the whole number of votes given at such election for the various officers, and for each of them voted for," and shall certify such statements to be correct, and subscribe the same, (Sec. 24, p. 29, Gen. Stat.) ; that " they shall make and subscribe, on the proper statement, a certificate of their determination, and shall deliver the same to the Secretary of State," (Sec. 25, p. 29, Gen. Stat.) ; that " upon such statements they shall proceed to determine and declare what persons have been, by the greatest number of votes, duly elected to such offices, or either of them ; and they shall have power, and it is made their duty, to decide all cases under protest or contest that may arise, when the power to do so does not, by the Constitution, reside in some other body ;" that the Secretary of State shall record in his office " each statement and determination which shall be delivered to him by the Board of State Canvassers ;" that he shall transmit " a copy of such certified determination to each person thereby declared to be duly elected, and a like copy to the Governor, and cause a copy to be published in one or more news-papers, and shall record in his office the names, etc., of all County officers elected, (Secs. 29, 30, 31, 32, p. 30, Gen. Stat.)

The foregoing provisions of law constitute the substantial features of the election law of this State as it stood at the time of the pas-sage of the Barnwell Act, and the election held on the 22d day of March last.

The relators claim that the second Section of the Barnwell Act expressly incorporates these provisions of law into the law governing the election in question, by the force of the words: " *Provided,* That, in all respects the said election shall be *held, conducted* and *determined,* as is now provided by law, for the holding of elections for State and County officers."

They then proceeded at length to maintain their construction of the Act, and cited Potter's Dwarris on Stat., 218, 219, note 11, 123; *Rex* vs. *Justices of Surry,* 2 T. R., 504; Fitzgib., 194; Bac. Ab., Tit. Statute; *Townsend* vs. *Brown,* 4 Zab., (N. Y.,) 80; *Minis* vs. *United States,* 15 Pet., 423; *Wyman* vs. *Southard,* 10 Wheat, 1–30; Sedg. on Stat. and Const., 62; Potter's Dwarris on Stat., 144; *Hart* vs. *Cleis,* 8 Johns. R., 44; 1 Black. Com., 60; *People* vs. *Utica Ins. Co.,* 15 Johns. R., 358, 360; Sedg. on Const. and Stat. Law, 238, 260.

*James T. Aldrich,* for respondents :

I. The decision herein is not the subject of appeal or review. State Const., Art. IV, Sec. 4; 1 Rich. R., New Series, 1, 114; A. A. 1868, Sp. Sess., 12; Code, Sec. 349, p. 500; Laws of 1859, N. Y. Ch., 174, Sec. 3; 2 Whittaker's Pr., 795; 18 N. Y. Rep., 497; Voorhees Ann. Code, 532, note b; 3 Howard, 165; 10 Wend., 30; 2 John's Cases, 2 Ed., 217, 63 in note; 2 Crary's Pr., 84.

II. A saving clause or proviso in a statute is to be rejected when it is repugnant to the body of the Act. The last words of an Act, like the last words of a will, must prevail where there is repugnancy.—1 Kent Com., 5 Ed., 463; *Smith* vs. *Bell,* 6 Pet., 68; same case in 10 Vol. Decis. Sup. Ct. U. S. by B. R. Curtis, 73; *Felder* vs. *Felder,* 5 Rich., 509 to 515; 12 Rich. Eq., 361 to 366, case of *Priester* vs. *Priester.*

III. Appeals are not to be allowed except in cases where they are expressly granted by law. Same rule in regard to right of protest, except in elections *to office.*—Broom's Leg. Max., 729; *Carnan* vs. *Wall,* 1 Bail. Law, 209; Acts of 1872 and 1873, p. 411; Cooley's Con. Lim., 619 to 622; *Ibid,* 623, 624; Sec. 27 of Act of 1870, p. 396; Broom's Leg. Max., 146, 147; Potter's Dwarris, 216.

IV. There is determination, at every stage of this election, beginning at the close of the polls, when the Managers canvass the ballots.—Act of 1868, Sec. 26, p. 139; Act of 1870, Secs. 15 to 18, p. 395; Act of 1872, Sec. 3, p. 171.

V. The incongruity of requiring this special election to be " *determined* " in all respects as the State elections are " *held,*" is very suggestive.

VI. The special purpose of this election was to fix the locality which, by force and virtue, *not of the election itself,* but *of the Act,* was to become the County seat.

VII. This election has been held, conducted and *determined* (*for the purposes of the statute*) in the very manner prescribed by the statute. The vice of the opposite reasoning consists in pressing on and passing by this determination *made by the Act,* and invoking another, by the State Board, not contemplated by the Act.

VIII. A certificate is a writing by which an officer, or other person, *bears testimony* that a fact has or has not taken place.—1 Bouvier's Law Dict., 230 ; 2 Phil. Ev., 1046 ; Cow. and H. Notes.

IX. " Upon canvassing the votes;" meaning of the word " *upon.*"

X. The words, " *under the Constitution,*" and " *special elections,*" as employed in the 1st Section election Act of 1872, p. 170, clearly refer only to the elections mentioned in the Constitution, (State and County officers,) and special elections to fill vacancies therein.

XI. Where the writ of *mandamus* would be vain or useless, the Court will stay its hand.—*State* vs. *Acting Board Aldermen of Charleston,* 1 S. C., 30.

XII. If necessary, the Court should rather strike out from the proviso the words " conducted and determined," than do greater violence to the statute by adopting the construction of the relators.

Aug. 28, 1873. The opinion of the Court was delivered by

WRIGHT, A. J.  This case arose by a petition for a *mandamus* to compel the Chairman of the Board of County Canvassers of Barnwell County to " forward, addressed to the Governor and Secretary of State, by a messenger, the returns, poll list and all papers appertaining to the election," as provided by the fourth Section of the Act of the General Assembly, approved March 12, 1872.  By an Act of the General Assembly, approved February 12, 1873, entitled " An Act to refer to the qualified voters of Barnwell County the location of the County seat of said County, County offices, and the place for holding the Courts of said County," an election was held on the 22d day of March, 1873, that the " qualified " voters of the said County might determine, by ballot, the location of the County seat

of said County, County offices, and the place for holding the Courts of said County.

By the second Section of the last mentioned Act this election was to be in all respects "held, conducted and determined as is now provided by law for the holding of elections for State and County officers." It is admitted that this election was held and conducted as is now provided by law for the holding of elections for State and County officers, but that it was not determined as such elections are determined, for the reason that the Chairman of the Board of County Canvassers did not, and refused to, send to the Governor and Secretary of State the returns of the said election, together with a protest presented by the relators, and all other papers appertaining to the said election; and in consequence of such refusal on the part of the said Chairman of the Board of County Canvassers, the relators complain "that by reason of the said refusal and neglect of the said Chairman of the Board of County Canvassers, your petitioners are wronged, aggrieved and deprived of their legal rights, in that the said protest has been disregarded and a pretended certificate of the final results of the said election has been made by the said Board of County Canvassers to the Board of County Commissioners of said County, whereby your petitioners are prevented from contesting the validity of said election, from establishing the allegations made in said protest, and from obtaining from the Board of State Canvassers a final certificate of the result of said election as required by the law of said State."

Under our form of government the right of appeal cannot be denied, and hence tribunals have been established, so that all who desire may be heard, by complying with certain prescribed and established rules; and as the people are the sovereign power of the State, and the right of franchise a very sacred right, it is as equally important that the right to present a protest in an election case, and be heard upon the same, should be equallly preserved, and the General Assembly, in its wisdom, established a tribunal for that purpose, known as the "Board of State Canvassers," which has power, "and it is made their duty, to decide all cases under protest or contest that may arise, when the power to do so does not, by the Constitution, reside in some other body." (Section 26, p. 32, Revised Statutes.) Now, as there is no other body that is, by the Constitution, vested with the power of protests and contests in elections of

this kind, it is made the imperative and especial duty, by the Section of the Act above quoted, of the "Board of State Canvassers" to decide all such cases.

By Section 16 of the Act, (General Statutes, p. 31,) it is made the duty of the Board of County Canvassers to count the votes of the County, and "make such statements thereof as the nature of the election shall require, within ten days of the time of their first meeting as a Board of County Canvassers, and shall transmit to the Board of State Canvassers any protest and all papers relating to the election;" and by the seventeenth Section of the same Act they are required to make duplicate statements, and such statements they are required to "file in the office of the Clerk of the County; and if there be no such duly qualified, according to law, then in the office of the Secretary of State." According to the Act of the General Assembly, approved February 12th, 1873, entitled "An Act to refer to the qualified voters of Barnwell County the location of the County seat of said County, County offices, and the place for holding the Courts of said County," there is an extra duty imposed upon the Commissioners of Election, (who are the Canvassers,) but no real variance or material change. That duty is, that after the canvassing of the votes given at the election, held by virtue of the said Act, they are required to certify to the Board of County Commissioners for Barnwell County "the number of votes given for each locality" for the County seat. The certificate of the Commissioners of Election cannot be regarded as "nugatory," inasmuch as that certificate is a mere statement of the number of votes given for each locality, and must correspond with the statement to be filed as provided by the seventeenth Section of the general Act; and it cannot be regarded as "premature," as there is no special time fixed when such certificate should issue, save "upon the canvassing of the votes given at such election."

The action of the Board of State Canvassers cannot change the statement of the votes which may be filed in the office of Clerk of the County, or as may be in the office of the Secretary of State. But after hearing the protest in this case, they might determine that the County seat should be located at a different place from that which the statement of the County Canvassers or certificate of the Commissioners of Election would leave it, as, in many cases, those who get a majority of the votes for certain offices do not get the offices.

By Section 24 of the general Act it is made the duty of the Board of State Canvassers, upon the certified copy of the statement made by the Board of County Canvassers, to make a statement of the whole number of votes given at each election for the various officers, and for each of them voted for; therefore, it appears that the Board of State Canvassers is simply to scrutinize the statements made by the Board of County Canvassers, and to see that such statements are correct, as stated, as separate statements are required to be made. Such statements they are to certify as being correct as it came from the County Canvassers, "and subscribe the same with their proper names." According to the twenty-sixth Section of the same Act they "then proceed to determine and declare what persons, by the *greatest number of votes*, have been duly elected to such office, or either of them."

Thus, it is seen, they simply make a statement as received from the Board of County Examiners or Canvassers, and subscribe the same as being correct, as that, according to the number of votes cast, such and such persons have been elected to certain offices. Then they proceed and hear any protest or contest that may have been sent, and determine which of the parties voted for is entitled to the office, and declare the same, and subscribe, "on the proper statement, a certificate of their determination, and shall deliver the same to the Secretary of State."—Section 25, p. 32, Revised Statutes. This certificate is the final one, which not only should contain the number of votes given for each person voted for, but should state which of such persons is entitled to the office, as determined by the Board of State Canvassers.

It then becomes the duty of the Secretary of State, "without delay, to transmit a copy, under the seal of his office, of the certified determination of the Board of State Canvassers to each person thereby declared to be elected, and a like copy to the Governor." Section 30, p. 33, Revised Statutes.

This being a special election, and for the location of the County seat of Barnwell County, and the said County being a corporation, the representatives of which are the County Commissioners, it would become the duty of the Secretary of State to transmit a copy, under the seal of his office, of the certified determination of the Board of State Canvassers to the County Commissioners of Barnwell County. Thus full force and effect is given to both statutes, and to each part of the same touching this case, enabling

all sections to stand and operate in reason and right and secure to all who feel " wronged and aggrieved" the right to be heard.

As to the other question relative to the jurisdiction of this Court to review, upon appeal, an order from a Circuit Judge discharging a rule to show cause in *mandamus*. The Code of Procedure is divided into two parts: "The first relates to Courts of justice and their jurisdiction, and the second relates to civil actions in the Courts of this State."—§ 8, p. 424, 14 Stat. at Large.

The jurisdiction of this Court, so far as reviewing upon appeal is concerned, is conferred by Part I of the Code of Procedure.

By an Act of the General Assembly, approved August 20, 1868, the writ of error was introduced in this State and applied to cases in *mandamus* and prohibition. By Section 463 of the Code of Procedure, the writ of error in all cases is abolished. That Section is as follows: "No writ of error shall be hereafter issued in any case whatever. Whenever a right, now existing, to have a review of a judgment rendered, or order or decree made, before the first day of January, 1871, such review can only be made upon an appeal taken in the manner provided by this Act; but all appeals or writs of error heretofore taken from such judgments, orders or decrees which are still pending in the appellate court, and not dismissed, shall be valid and effectual. But this Section shall not extend the right of review to any case or question to which it does not now extend, nor the time for appealing." The 475th Section of the Code of Procedure has no reference to the manner of reviewing a judgment or order, but only relates to the mode of procedure in cases of *mandamus* and prohibition, and is intended to retain the mode of procedure established by 9 Ann, C. 20, 2 Statutes at Large, p. 568. This statute is of force in this State, with certain modifications, established by the Code of Procedure.—Revised Statutes, p. 547.

The order in this case has heretofore been given.

WILLARD, A. J. I concur with the foregoing as it regards the duties of the Canvassers of Barnwell County, and as to the jurisdiction of the Court.

MOSES, C. J. I concur in so much of the opinion as refers to the jurisdiction of this Court, but I do not agree with so much of it as prescribes the course to be pursued under the particular Act, and, therefore, do not concur in the order directing the issuing of the writ prayed for.